IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, a not-for-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>(1) FORREST COUNTY, MISSISSIPPI;<br><br>(2) BILLY MCGEE, Sheriff, individually and in his official capacity; and<br><br>(3) JOHN AND JANE DOES 1-10, Staff, individually and in their official capacities,<br><br>Defendants. | Civil Action No.: 2:18-cv-184-KS-MTP |

## COMPLAINT

*Jury Trial Demanded for Damages Claims*

### I. INTRODUCTION

1. For decades, the United States Supreme Court has recognized that the freedom to read and correspond with the outside world while incarcerated carries important benefits to both prisoners and society as a whole. To this end, Plaintiff, the Human Rights Defense Center ("HRDC" or "Plaintiff"), provides incarcerated persons across the United States with publications regarding their legal and civil rights, as well as options for accessing education while incarcerated. However, in the Forrest County Jail (the "Jail"), most books and most publications are banned. For the most part, prisoners are allowed to read only the Bible and sometimes other Christian publications. HRDC's publications and mail --- including the award-winning monthly magazine, *Prison Legal News*; a guide to educational correspondence programs in the United States; a legal manual; and copies of court opinions that are relevant to prisoners --- are prohibited. These policies and practices of the Defendants, which unconstitutionally forbid delivery of Plaintiff's

publications and mail to prisoners housed in the Jail, violate of the First Amendment to the United States Constitution. Defendants' policies and practices also deny due process of law to senders whose mail is censored, such as Plaintiff, by failing to provide notice of and an opportunity to challenge each instance of censorship as required by the Fourteenth Amendment to the United States Constitution. HRDC brings this action to enjoin Defendants' censorship of its publications and other items mailed to prisoners held in the Jail, and to require Defendants to provide due process when they reject items sent to prisoners at that facility.

## II. JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1331 (federal question), as this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 (civil rights), as this action seeks redress for civil rights violations under 42 U.S.C. § 1983.

3. Venue is proper under 28 U.S.C. § 1391(b). At least one Defendant resides within this judicial district and the events giving rise to the claims asserted herein all occurred within this judicial district.

4. HRDC's claims for relief are brought pursuant to 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the First and Fourteenth Amendments to the Constitution and laws of the United States.

5. This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and the Court also has jurisdiction to award damages against all Defendants.

6. HRDC's claim for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

### III. Parties

7. The Human Rights Defense Center is a not-for-profit charitable organization recognized under § 501(c)(3) of the Internal Revenue Code, incorporated in the state of Washington and with principal offices in Lake Worth, Florida. The purpose of HRDC is to educate prisoners and the public about the destructive nature of racism, sexism, and the economic and social costs of prisons to society. HRDC accomplishes its mission through advocacy, litigation, and the publication and/or distribution of books, magazines, and other information concerning prisons and prisoner rights.

8. Defendant Forrest County, Mississippi (the "County") is a unit of government organized and existing under the laws of the State of Mississippi. The County operates the Jail, and is and was responsible for adopting and implementing mail policies governing incoming mail for prisoners at that facility.

9. Defendant Billy McGee is the Sheriff of the County. Defendant McGee is employed by and is an agent of Defendant County, and has ultimate responsibility for the promulgation and enforcement of all Jail policies, practices, and procedures and is responsible for the overall management of the Jail, including the policies, practices, and procedures relating to the reading material that is available to prisoners. He is sued in his individual and official capacities.

10. The true names and identities of Defendants DOES 1 through 10 are presently unknown to HRDC. Each of Defendants DOES 1 through 10 are or were employed by and are or were agents of Defendants and were personally involved in the adoption and/or implementation of the publications and mail policies at the Jail.

11. At all times material to this action, the actions of all Defendants as alleged herein were taken under the authority and color of state law.

12. At all times material to this action, all Defendants were acting within the course and scope of their employment as agents and/or employees of Defendant County.

## IV. FACTUAL ALLEGATIONS

### A. HRDC's Mission and Outreach to Detention Facilities

13. For more than 28 years, the focus of HRDC's mission has been public education, advocacy and outreach on behalf of, and for the purpose of assisting, prisoners who seek legal redress for infringements of their constitutionally guaranteed and other basic human rights. HRDC's mission, if realized, has a salutary effect on public safety.

14. To accomplish its mission, HRDC publishes and distributes books, magazines, and other materials containing news and analysis about prisons, jails and other detention facilities, prisoners' rights, court rulings, management of prison facilities, prison conditions, and other matters pertaining to the rights and/or interests of incarcerated individuals.

15. HRDC engages in core protected speech and expressive conduct on matters of public concern, such as the operation of prison facilities, prison conditions, prisoner health and safety, and prisoners' rights. HRDC's publications contain political speech and social commentary, which are core First Amendment rights and are entitled to the highest protection afforded by the United States Constitution.

16. HRDC has thousands of customers in the United States and abroad, including prisoners, attorneys, journalists, public libraries, judges, and members of the general public. Since its creation in 1990, HRDC has sent its publications to prisoners and law librarians in more than 3,000 correctional facilities located across all fifty states, including the Federal Bureau of Prisons and various facilities within the State of Mississippi

17. HRDC publishes and distributes a 72-page monthly magazine titled *Prison Legal News: Dedicated to Protecting Human Rights*, which contains news and analysis about prisons, jails, and other detention facilities, prisoners' rights, court opinions, management of prison facilities, prison conditions, and other matters pertaining to the rights and/or interests of

incarcerated individuals. In 2013, Prison Legal News received the First Amendment Award from the Society of Professional Journalists.

18. More recently, HRDC also began publishing a second monthly magazine, *Criminal Legal News*. This magazine focuses on review and analysis of individual rights, court rulings, and news concerning criminal justice-related issues.

19. Additionally, HRDC publishes and/or distributes dozens of different softcover books about the criminal justice system, legal reference books, and self-help books of interest to prisoners. These books are designed to foster a better understanding of criminal justice policies and to allow prisoners to educate themselves about related issues, such as legal research, how to write a business letter, health care issues, and similar topics. Pertinent to this case, HRDC publishes and distributes the *Prisoners' Guerilla Handbook: A Guide to Correspondence Programs in the United States and Canada* ("*Prisoners' Handbook*"), which provides prisoners information on enrolling at accredited higher educational, vocational and training schools, and *The Habeas Citebook: Ineffective Assistance of Counsel* ("*Habeas Citebook*"), which describes the procedural and substantive complexities of federal habeas corpus litigation with the goal of identifying and litigating claims involving ineffective assistance of counsel.

20. In addition to monthly journal issues and books, HRDC also sends prisoners: (a) informational brochure packets, which contain a brochure and subscription order form, a book list, and a published books brochure (each of which is a single page), and (b) copies of judicial opinions of import to prisoners.

  **B.**  <u>**Defendants' Unconstitutional Publications and Mail Policies and Practices**</u>

21. The only books and publications that the Defendants permit prisoners to read are the Bible and, on occasion, other Christian reading material. The Defendants ban publications and mail sent by HRDC to prisoners at the Jail. Accordingly, Defendants' publications and mail

5

policies and practices violate HRDC's rights under the Free Speech Clause and the Establishment Clause of the First Amendment.

22. Furthermore, Defendants engage in a policy or practice that fails to provide senders of censored mail notice and an opportunity to appeal the censorship of the mail to the intended prisoner. Accordingly, such policy violates HRDC's Fourteenth Amendment rights to due process.

23. In August 2018 HRDC sent the following materials to prisoners held at the Jail: (1) issues of the magazine *Prison Legal News*, (2) issues of the magazine *Criminal Legal News*, (3) the *Prisoners' Handbook*, (4) the *Habeas Citebook*, (5) informational brochure packets, and (6) court opinions. Each of these items were individually addressed and separately mailed.

24. Defendants censored these materials by failing to deliver them to the intended prisoner-recipients at the Jail. Plaintiff can identify at least seventy-seven (77) items of mail sent by HRDC to prisoners held in the Jail which were banned by Defendants. This includes fifteen (15) issues of *Prison Legal News*, fourteen (14) issues of *Criminal Legal News*, seven (7) copies of the *Prisoners' Handbook*, twelve (12) copies of the *Habeas Citebook*, fourteen (14) informational packets, and fifteen (15) court opinions. These items were returned to HRDC's offices marked "Return to Sender".

25. On information and belief, other magazines, books, and mail sent by HRDC to persons incarcerated at the Jail were also censored by Defendants.

26. Further, Defendants failed to provide HRDC any notice or opportunity to appeal these censorship decisions.

27. Due to Defendants' actions as described above, HRDC has suffered damages, and will continue to suffer damages, including, but not limited to: the suppression of HRDC's speech; the impediment of HRDC's ability to disseminate its political message; frustration of HRDC's non-profit organizational mission; the loss of potential subscribers and customers; and the inability to recruit new subscribers and supporters, among other damages.

28. Defendants, and other agents of the Jail, are responsible for or personally participated in creating and implementing these unconstitutional policies, practices, and customs, or for ratifying or adopting them. Further, Defendants are responsible for training and supervising the staff persons whose conduct has injured and continues to injure HRDC.

29. Defendants' actions and inactions were and are motivated by ill motive and intent, and were and are all committed under color of law with deliberate indifference to HRDC's rights.

30. Plaintiff will continue to mail copies of its books and other publications to subscribers, customers, and other individuals imprisoned at the Jail.

31. Defendants' unconstitutional policy, practices, and customs are ongoing, continue to violate HRDC's rights, and were and are the moving force behind the injuries HRDC suffered as a direct result of the constitutional violations. As such, HRDC has no adequate remedy at law.

32. Without relief from this Court HRDC will suffer irreparable injury, since its fundamental free speech and due process rights are being denied. The balance of hardships favors the Plaintiff and the public interest will be served by granting injunctive and declaratory relief.

33. The accommodation of the free speech and due process rights of HRDC with respect to written speech protected by the Constitution will not have any significant impact on the Jail, its staff or prisoners.

34. HRDC is entitled to declaratory relief as well as injunctive relief prohibiting Defendants from refusing to deliver publications and correspondence from HRDC and other senders without any legal justification, and prohibiting Defendants from censoring mail without due process of law.

## V. CLAIMS

### Count I – 42 U.S.C. § 1983
*Violation of the First Amendment (Free Speech)*

35. HRDC re-alleges and incorporates the allegations of Paragraphs 1 through 34 of the Amended Complaint as if fully set forth herein.

36. The acts described above constitute violations of HRDC's right to communicate with incarcerated individuals under the Free Speech Clause of the First Amendment.

37. The conduct of Defendants was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

38. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

39. Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

40. HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants. HRDC seeks punitive damages against the individual Defendants in their individual capacities.

### Count II – 42 U.S.C. § 1983
*Violation of the First Amendment (Establishment Clause)*

41. HRDC re-alleges and incorporates the allegations of Paragraphs 1 through 40 of the Amended Complaint as if fully set forth herein.

42. These acts violate HRDC's right to send non-Christian and secular publications to incarcerated individuals without being censored on religious grounds in violation of the Establishment Clause of the First Amendment.

43. There is no rational, non-discriminatory reason to differentiate between Christian reading materials and the mail and publications sent by HRDC.

44. The conduct of Defendants was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

45. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

46. Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

47. HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants. HRDC seeks punitive damages against the individual Defendants in their individual capacities.

### Count III – 42 U.S.C. § 1983
*Violation of the Fourteenth Amendment (Due Process)*

48. HRDC re-alleges and incorporates the allegations of Paragraphs 1 through 47 of the Amended Complaint as if fully set forth herein.

49. Because HRDC has a liberty interest in communicating with prisoners, HRDC has a right under the Due Process Clause of the Fourteenth Amendment to receive notice of and an opportunity to appeal Defendants' decisions to censor their written speech.

50. Defendants' policy and practice fail to provide HRDC and other senders with adequate notice and an opportunity to be heard.

51. The conduct of Defendants was objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

52. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which are and were the moving force of the violations.

53. Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

54. HRDC seeks declaratory and injunctive relief, and nominal and compensatory damages against all Defendants. HRDC seeks punitive damages against the individual Defendants in their individual capacities.

## VI. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests relief as follows:

55. A declaration that Defendants' policies and practices violate the Constitution.

56. A preliminary and permanent injunction preventing Defendants from continuing to violate the Constitution, and providing other equitable relief.

57. Nominal damages for each violation of HRDC's rights by the Defendants.

58. Compensatory damages in an amount to be proved at trial.

59. Punitive damages against the individual Defendants in an amount to be proved at trial.

60. Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988, and under other applicable law.

61. Any other such relief that this Court deems just and equitable.

## VII. JURY DEMAND

Plaintiff, Human Rights Defense Center, by and through its attorneys, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

s/Robert B. McDuff
ROBERT B. MCDUFF, MSB# 2532
767 North Congress Street
Jackson, MS 39202
(601) 969-0802
rbm@mcdufflaw.com

BETH L. ORLANSKY, MSB# 3938
MISSISSIPPI CENTER FOR
JUSTICE
P.O. Box 1023
Jackson, MS 39205-1023
(601) 352-2269
borlansky@mscenterforjustice.org

*Counsel for Plaintiff HRDC*